IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

BOARD OF EDUCATION OF THE
RIO RANCHO PUBLIC SCHOOLS,

      Appellant,

vs.                                                             No. CIV 07-0286 RB/WDS

TOM & LYDIA COLEMAN,
on behalf of their daughter, ELANA COLEMAN,

      Appellees.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** came before the Court on Defendants' ("Parents'") Motion for Injunctive Relief (Doc. 6), filed on May 28, 2007. The Court held a hearing on this motion on June 21, 2007. Jurisdiction arises under 28 U.S.C. § 1331. The Court, having considered the arguments of counsel, record, relevant law, and being otherwise fully advised, finds that this motion should be granted.

**I.**      **Background.**

On March 26, 2007, Plaintiff ("Board") filed this appeal from the February 26, 2007 decision of the due process hearing officer ("DPHO") under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq*. Board seeks reversal of the DPHO's decision on the grounds that the evidence does not support the DPHO's determination that Board denied Student[1] a "free appropriate public education" ("FAPE") and the DPHO was not fair and impartial. On May 31, 2007, Parents answered and counterclaimed that Board violated the Rehabilitation Act, 29 U.S.C. §701, and the Americans with Disabilities Act, 42 U.S.C.A. §12102, by discriminating against Student by failing to provide services.

---

[1] Board identified the child as Elana Coleman in the complaint. However, Parents refer to the child as "E.C" The DPHO referred to the child as "Student." The term employed by the DPHO is utilized herein.

On May 28, 2007, Parents filed their Motion for Injunctive Relief, seeking an order requiring Board to comply with 20 U.S.C. §1415(f), the IDEA's "stay-put" provision. Board responded that Parents have not pleaded the elements of injunctive relief.

## II.     Decision of the DPHO.

The following summary is extracted from the decision of the DPHO.[2]

Student was born on July 29, 2002 with Trisomy 21 (Down Syndrome). Student has significant speech, fine motor, and gross motor delays, as well as other developmental delays. Since infancy, Student has received early intervention services. After Student moved with her family from Illinois to New Mexico in 2004, Student continued to receive early intervention services through the New Mexico Department of Health's Family, Infant, and Toddler Program ("FIT").

Beginning on her third birthday, July 29, 2005, Student was entitled to special education services. *See* 20 U.S.C. § 1412(a)(1)(A); 34 C.F.R. § 124(b). New Mexico regulations required Board to schedule an individualized education program ("IEP") meeting in August 2005, fifteen days before the start of the 2005-2006 school year. However, Board waited for the Department of Health to schedule a transition meeting based on a mistaken belief, shared by Parents, that Student was eligible for FIT services or special education services, but not both. The DPHO found that, because the FIT services were compensatory services, Student was entitled to both FIT services and special education services after her third birthday. The DPHO determined that the Board erred in good faith, but the practical effect was to deny Student FAPE during the 2005-2006 school year.

At the December 15, 2005 transition meeting, Parents informed Board that they believed that Montessori of the Rio Grande Preschool ("Montessori") would provide Student an appropriate

---

[2] Although the parties will undoubtedly contest these findings in their briefs on the merits, such disputes are not germane to the issues raised by the motion for injunctive relief.

education in the least restrictive environment ("LRE"). Board responded that the LRE requirement did not apply to preschool students because there were no general education publically-funded preschool settings in New Mexico. Board proposed to place Student in Board's Shining Stars Preschool ("Shining Stars") for developmentally disabled children.

Parents disagreed with Board's proposal to place Student at Shining Stars. Student remained in the FIT program until March 7, 2006. When the FIT services ended, Parents placed student at Montessori.

Board held the initial IEP meeting on April 26, 2006. At the IEP meeting, Parents sought reimbursement for the Montessori tuition, including the cost of an aide. Board did not offer any services at the April 26, 2006 IEP meeting, which was continued to May 19, 2006. At the conclusion of the May 19, 2006 meeting, Board offered Student placement at Shining Stars, with occupational, physical and speech and language therapies, or such therapies alone. The therapy-only option was subsequently withdrawn.

On May 26, 2006, Board scheduled a meeting to consider Parents' request for extended school year ("ESY") services for Student. Parents and Board agreed that student needed ESY services in the areas of occupational therapy and speech and language therapy for one hour per week from May 31, 2006 through June 29, 2006. However, Board required Parents to sign a form either agreeing or disagreeing with all of Board's proposals. Parents declined to agree or disagree to all proposals, but did note their agreement on the form to the ESY services only.

Board refused to provide ESY services during Summer 2006. Parents paid for some physical, occupational, and speech and language therapy for Student during Summer 2006. The DPHO found that at least one hour per week of such therapy was necessary to provide FAPE.

On September 13, 2006, an IEP meeting was held for the 2006-2007 school year. The IEP

team recommended placement at Shining Stars with (1) a very low student to teacher ratio, (2) direct individualized instruction, (3) a teacher able to ensure skills were taught as part of developmental continuum, and (4) the participation of occupational, physical and speech and language therapists in the program.

On September 20, 2006, Parents filed a due process challenge to the IEP, alleging that Board denied Student FAPE between August of 2005 and the spring semester of 2007. A due process hearing was held in December and January of 2007.

On February 26, 2007, the DPHO determined that Board denied Student FAPE between August of 2005 and August of 2006 because: (a) Board failed to conduct a timely Individualized Education Program ("IEP") meeting and to timely develop and implement an IEP for Student at the beginning of the 2005-2006 school year, as required by 34 C.F.R. § 300.124(b); (b) Board offered Student no program for the 2005-2006 school year; and (c) Board refused to provide the extended school year services agreed upon by the parties between May of 2006 and August of 2006.

As a result of these findings, the DPHO ordered that:

1. Student attend Shining Stars;
2. Board pay for three half-days per week at Montessori;
3. Board pay for the full summer session at Montessori in the Summer of 2007 and Summer 2008, in addition to any ESY services provided by Board through the IEP in each of those years, along with an aide if Student requires one;
4. Reimbursement to parents for occupational therapy, speech and language therapy, and physical therapy for March-May 2006, and Summer 2006;
5. Compensatory service consisting of twenty hours of hippotherapy; and
6. Reimbursement for Montessori tuition from March through May 2006 in the amount of $1588 (tuition) and $576 (aide).

According to Parents' brief, the compensatory education services most relevant to Parents' request for injunctive relief are the following:

1. Placement at Montessori for three half-days per week until the end of the 2006/2007 school year;

      2.        Placement at Montessori during Summer 2007, with an aide;
      3.        Twenty hours of hippotherapy at Skyline Therapies; and
      4.        Compensatory services in the form of therapies.

Board is providing ESY services to Student in the form of two hours a week of therapies to reduce regression. Parents have placed Student in the Montessori summer program at Parents' expense. Parents have arranged for Student to receive one hour of supplemental therapy per week during the summer. Parents proffered that Student will be dis-enrolled from the Montessori program on Monday, June 25, 2007 and the supplemental therapy will cease due to Parents' inability to pay for these services. Student is scheduled to begin kindergarten in August 2007.

### III. Standards.

> The IDEA sets up a unique standard for a federal court's review of the administrative due process hearing. A district court applies a modified de novo standard in reviewing a hearing officer's decision under the IDEA. It looks at the record of the administrative proceedings and decides, based on a preponderance of the evidence, whether the requirements of the IDEA are met. In so doing, it must give "due weight" to the hearing officer's findings of fact, which are considered prima facie correct. Although the district court may accept additional evidence, such evidence is merely supplemental to the administrative record . . . .

*Ellenberg v. New Mexico Military Institute*, 478 F.3d 1262, 1274 (10th Cir. 2007) (quoting *L.B. ex rel. K.B. v. Nebo Sch. Dist.*, 379 F.3d 966, 974 (10th Cir. 2004).

The burden of proof in a proceeding challenging the decision of a DPHO, which, in this context, is the functional equivalent of an IEP (*see* discussion IV, A), rests with the party seeking relief. *See Schaffer v. Weast*, 546 U.S. 49, 126 S.Ct. 528, 535 (2005). By bringing this appeal, Defendants seek to modify the DPHO's decision. Thus, Defendants bear the burden of proof with respect to the analysis under Section 20 U.S.C. § 1415(j).

The burden of proof under Fed. R. Civ. P. 65 lies with the party seeking injunctive relief. *Schrier v. Univ. of Colorado*, 427 F.3d 1253, 1258 (10th Cir. 2005). For purposes of the Rule 65

5

analysis, the burden of proof rests with Parents.

**IV.     Discussion.**

    **A.     Section 1415(j) requires Board to comply with the decision of the DPHO.**

The IDEA was enacted "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for employment and independent living." 20 U.S.C. § 1400(d)(1)(A). To achieve this objective, the IDEA provides federal money to state and local education agencies, on the condition that such state and local education agencies comply with its requirements, both substantive and procedural. *See* 20 U.S.C. § 1412.

The primary substantive guarantee of IDEA is the provision of FAPE to children with disabilities. *See* 20 U.S.C. §§ 1401(14) and 1412. To provide FAPE, a local education agency must provide "personalized instruction with sufficient support services to permit the child to benefit educationally from that instruction." *Bd. of Educ. v. Rowley*, 458 U.S. 176, 203 (1982).

In addition to the promise of FAPE, the IDEA contains several procedural guarantees. If the parents of a disabled child disagree with the IEP proposed by a local educational agency, they may convene "an impartial due process hearing" to resolve their complaints. 20 U.S.C. § 1415(f)(1). If any of the parties to the due process hearing are aggrieved by the result of that hearing, the IDEA authorizes the institution of a civil action in federal court to challenge the "findings and decision" made in the due process hearing. 20 U.S.C. § 1415(i)(2)(A).

As the Supreme Court has noted, "the review process is ponderous" and time-consuming. *Sch. Comm. of the Town of Burlington, Mass. v. Dep't of Educ.*, 471 U.S. 359, 368, (1985). To ameliorate the effects of the inherent delays in the review process, the child's placement during the pendency of any proceedings challenging a proposed IEP is covered by 20 U.S.C. § 1415(j), the

IDEA's "stay-put" provision.

Section 1415(j) provides:

Except as provided in subsection (k)(7) of this section, during the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of such child, or, if applying for initial admission to a public school, shall, with the consent of the parents, be placed in the public school program until all such proceedings have been completed.

20 U.S.C. § 1415(j).

"The purpose of the stay-put provision is to prevent school districts from effecting unilateral change in a child's educational program" during the pendency of IDEA proceedings. *Erickson v. Albuquerque Pub. Schs.*, 199 F.3d 1116, 1121 (10th Cir. 1999) (internal quotation omitted). Section 1415(j) "guarantees an injunction that prohibits a school board from removing the child from his or her current placement during the pendency of the proceedings. The injunction is automatic; the party seeking it need not meet the usual requirements for obtaining preliminary injunctive relief." *Wagner v. Bd. of Educ. of Mont. County*, 335 F.3d 297, 301 (4th Cir. 2003) (Luttig, J.) (citation omitted).

The "stay-put" provision "represents Congress' policy choice that all handicapped children, regardless of whether their case is meritorious or not, are to remain in their current educational placement until the dispute with regard to their placement is ultimately resolved." *Drinker v. Colonial Sch. Dist.*, 78 F.3d 859, 864-65 (3d Cir. 1996). It "functions, in essence, as an automatic preliminary injunction." *Id.*, 78 F.3d at 864 (citing *Zvi D. v. Ambach*, 694 F.2d 904, 906 (2d Cir. 1982)).

"The stay-put provision has been interpreted as imposing an automatic statutory injunction . . . like the automatic stay in bankruptcy." C*asey K. ex rel. Norman K. v. St. Anne Cmty. High Sch. Dist. No. 302*, 400 F.3d 508, 511 (7th Cir. 2005) (Posner, J.). Indeed, even where a disabled child

7

poses a danger to other students, the plain language of section 1415(j) prevents schools from removing a child from school without the permission of the parents or an order of a hearing officer. *Honig v. Doe*, 484 U.S. 305, 323 (1988).  Thus, Section 1415(j) operates as a substitute for traditional preliminary injunction analysis.

Board cites no authority in support of its position that traditional preliminary injunction factors apply to the stay-put provision.  Contrary to Board's position, Parents need not satisfy the preliminary injunction elements to obtain an order maintaining Student's current educational placement pending the outcome of Board's appeal.  Board has failed to meet its burden of proof with respect to its argument that Section 1415(j) is inapplicable.

The key question under Section 1415(j) is determination of Student's current educational placement.  *See Wagner*, 335 F.3d at 301.  "The IDEA does not define 'current educational placement' but some courts hold the dispositive factor is the IEP in place when the stay-put provision is invoked." *Erickson,* 199 F.3d at1121.

In this case, there are two possible sources for Student's current educational placement; the September 2006 IEP and the DPHO's decision.  Parents argue that the DPHO's decision operates as the current educational placement.  Board does not advance an argument to the contrary in this regard.  Thus, the question is whether the DPHO's decision constitutes Student's current education placement.

The Honorable M. Christina Armijo, United States District Judge,  has held that: "The law is clear that an administrative decision in favor of the parents is equivalent to an agreement between the state agency and the parents and, therefore, represents the child's current education placement for purposes of the IDEA's 'stay-put' provision." *Bd. of Educ. of Albuquerque Pub. Schs. v. Miller*, No. CIV 05-502, 2005 U.S. Dist. LEXIS 43833, at *11 (D.N.M. July 22, 2005) (Armijo, J.).  Judge

8

Armijo is correct.

In *Burlington*, the hearing officer decided in favor of parents who had placed their child in a private school, and, thereafter, had challenged their child's IEP. *Burlington*, 471 U.S. at 372. The Court held that the decision of the hearing officer in favor of the parents constituted an agreement for the purposes of § 1415(e)(3) of the Education of the Handicapped Act, an earlier version of § 1415(j) of the IDEA. *Id.*

Similarly, in *Bd. of Educ. v. Schutz*, 290 F.3d 476, 484 (2d Cir. 2002), the Second Circuit determined that a ruling by a hearing officer in favor of the parents constituted an agreement within the meaning of § 1415(j). *See also Mackey v. Bd. of Educ.*, 386 F.3d 158, 163 (2d Cir. 2004); *Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ.*, 297 F.3d 195, 201 (2d Cir. 2002) (same). The Eleventh Circuit arrived at the same conclusion in *Ga. State Dep't of Educ. v. Derrick C.*, 314 F.3d 545, 552 (11th Cir. 2002). Similarly, the Third Circuit, relying upon the statutory text, purpose, and legislative history of the stay-put provision, concluded that the provision was promulgated to protect disabled children and their parents during the judicial review process. *Susquenita Sch. Dist. v. Raelee S.*, 96 F.3d 78, 82-84 (3d Cir. 1996). The Ninth Circuit reached the same result in *Clovis Unified Sch. Bd. v. Cal. Office of Admin. Hearings*, 903 F.2d 635, 641 (9th Cir. 1990).

Several district courts are in accord. *See County Sch. Bd. of Henrico County, v. R.T.*, 433 F.Supp.2d 692 (E.D.Va. 2006); *Escambia County Bd. of Educ. v. Benton*, 358 F.Supp.2d 1112, 1123-24 (S.D. Ala. 2005); *Bd. of Educ. of Poughkeepsie City Sch. Dist. v. O'Shea*, 353 F.Supp.2d 449, 456-58 (S.D.N.Y. 2005); *Bd. of Educ. of the Pine Plains Cent. Sch. Dist. v. Engwiller*, 170 F.Supp.2d 410, 414 (S.D.N.Y. 2001).

Each of these courts concluded that the school boards involved were required to maintain the placement ordered by the state hearing officer at the school board's expense pending the school

board's appeal of the hearing officer's decision. The rationale underlying these decisions was that a state hearing officer's decision in favor of the parents constituted an agreement to the change in placement within the meaning of § 1415(j). Board failed to meet its burden with respect to its request for modification of the DPHO's order pending appeal. The order of the DPHO will be enforced pending judicial proceedings related to the Board's appeal of the DPHO's order.

**B.     In the alternative, Parents are granted injunctive relief pursuant to Fed. R. Civ. P. 65.**

Board argues that Section 1415(j) does not apply to compensatory services ordered by the DPHO after denial of FAPE. Board cites no authority for this position. However, even if such were the case, I find, in the alternative, that Student should be granted injunctive relief under Fed. R. Civ. P. 65.

To prevail on a motion for a preliminary injunction pursuant to Rule 65, the moving parties must establish that: (1) they will suffer irreparable injury unless the injunction issues; (2) the threatened injury outweighs whatever damage the proposed injunction may cause the opposing party; (3) the injunction, if issued, would not be adverse to the public interest; and (4) there is a substantial likelihood of success on the merits. *Summum v. Pleasant Grove City*, 483 F.3d 1044, 1048 (10th Cir. 2007) (internal quotations omitted). Parents, as the moving parties, bear the burden of proof with respect to Rule 65. *Schrier*, 427 F.3d at 1258.

A preliminary injunction is an extraordinary remedy and is intended merely to preserve the relative positions of the parties until the case is resolved on the merits. *Summum*, 483 F.3d at 1048. The right to relief must be clear and unequivocal before a preliminary injunction may issue. *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1261 (10th Cir. 2004) (quotations omitted).

In addition, moving party must meet a heightened standard when requesting one of three

types of historically disfavored injunctions, which are: "(1) preliminary injunctions that alter the status quo; (2) mandatory preliminary injunctions; and (3) preliminary injunctions that afford the movant all the relief that it could recover at the conclusion of a full trial on the merits." *Summum*, 483 F.3d at 1048 (quoting *O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 975 (10th Cir. 2004) (en banc), aff'd and remanded, *Gonzales v. O Centro Espirita Beneficente Uniao Do Vegetal*, 546 U.S. 418 (2006)). Board argues that the preliminary injunction in this case is a mandatory injunction.

An injunction is characterized as mandatory "if the requested relief affirmatively requires the nonmovant to act in a particular way, and, as a result, places the issuing court in a position where it may have to provide ongoing supervision to assure the non-movant is abiding by the injunction." *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1261 (10th Cir. 2005). Here, the preliminary injunction would require only the payment of funds to Parents and would not require the Board to act in any specific way. In that the injunction is not mandatory, the heightened pleading standard is inapplicable.

Parents have met their Rule 65 burden. Student will suffer irreparable harm if the injunction is not granted. Student starts kindergarten in August 2007. The DPHO determined that Student requires intensive services to compensate for the denial of FAPE during the 2005-2006 school year. Parents proffered evidence that Student will be dis-enrolled from the Montessori program as of Monday, June 25, 2007, and Student will no longer receive her supplemental therapy, if Board is not required to pay these costs.

As the Third Circuit observed in *Susquenita*, "[w]ithout interim financial support, a parent's 'choice' to have his child remain in what the state has determined to be an appropriate private school placement amounts to no choice at all. The prospect of reimbursement at the end of the litigation

turnpike is of little consolation to a parent who cannot pay the toll at the outset." *Id*., 96 F.3d at 87. If the injunction is not granted, Student would be denied needed services during a critical period in her development. If this is the case, Student and Parents will suffer irreparable harm if the injunction is not granted.

The threatened injury outweighs the harm caused to the opposing party as a result of the injunction. The threatened injury is that Student, a four-year-old child with Down syndrome who was denied FAPE for a full school year, will not receive needed compensatory services to prepare her for kindergarten. The DPHO determined that Student requires such services to compensate for the denial of FAPE. The alleged harm is the expenditure of Board funds to provide compensatory services, which the DPHO ordered to compensate Student for Board's earlier failure to provide services. Thus, the DPHO decision merely compelled Board to expend funds that it should have already expended on behalf of Student. The second preliminary injunction factor is satisfied.

Given the purpose of the IDEA, the injunction is not adverse to the public interest. Thus, the third factor us satisfied. The fourth factor is less clear cut. Parents may well succeed on the merits of the case. Although this factor is difficult to assess, without the benefit of briefs or administrative record, the Court will not permit Student to be deprived of educational/developmental services this summer. It appears from the DPHO's decision that critical time has already been lost in this child's development. The question of who pays for what can be sorted out, but time lost cannot be restored.

Parents are on notice that, in the event Board prevails on the merits, Parents may have to repay the costs of the compensatory services expended by Board. Under these circumstances, I find the final preliminary injunction factor is satisfied and a preliminary injunction should issue, in the alternative, pursuant to Rule 65.

**WHEREFORE,**

**IT IS ORDERED** that Board shall comply with the provisions of the DPHO's decision pending the outcome of judicial proceedings pursuant to Section 1415(j).

**IT IS ORDERED**, in the alternative, that Board shall comply with the provisions of the DPHO's decision pending the outcome of judicial proceedings pursuant to Rule 65.

**IT IS FURTHER ORDERED** that Board shall expend whatever funds are necessary to ensure that Student continues in the Montessori program with the services of an aide until the regular school year commences in August 2007.

**IT IS FURTHER ORDERED** that Board shall expend whatever funds are necessary to continue Student in her current level of supplemental therapy until the regular school year commences in August 2007.

_____
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**